UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHRISTOPHER PIANTEDOSI, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil No. 18-12500-LTS |
| COMMONWEALTH OF MASSACHUSETTS, | ) ) ) ) | |
| Respondent. | ) ) ) | |

ORDER ON MOTION TO DISMISS (DOC. NO. 15)

March 14, 2019

SOROKIN, J.

Christopher Piantedosi, an inmate at the Old Colony Correctional Center in Bridgewater, Massachusetts, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent has moved to dismiss the petition, arguing it presents claims that Piantedosi has not exhausted in state court. Doc. Nos. 15, 16.[1] Piantedosi has not responded to the motion. Because all but one of Piantedosi's claims are unexhausted, the motion to dismiss will be ALLOWED unless Piantedosi elects to delete the unexhausted claims.

I.   BACKGROUND

On September 23, 2013, after a jury trial in Middlesex County Superior Court, Piantedosi was convicted of first-degree murder and malicious destruction of property. Doc. No. 1 at 1-2. The charges stemmed from the stabbing death of Piantedosi's long-term girlfriend in front of the

---

[1] Citations to items appearing on the Court's electronic docket ("Doc. No. __ at __") reference the document and page numbers assigned by ECF.

couple's teenaged daughter. Commonwealth v. Piantedosi, 87 N.E.3d 549, 551-52 (Mass. 2017). He received a mandatory life sentence on the murder charge. Doc. No. 1 at 1.

Piantedosi filed a timely appeal. Doc. No. 17-1 at 11. Through counsel, his direct appeal challenged: 1) "the judge's decision declining to permit a defense expert to testify on direct examination to hearsay statements made by the defendant"; 2) "the introduction of testimony by the Commonwealth's expert concerning what 'drove' the defendant's behavior"; and 3) "the judge's failure to instruct the jury that the consequences of a verdict of not guilty by reason of insanity would include a potential psychiatric commitment for life." Piantedosi, 87 N.E.3d at 550. Piantedosi also asked the Supreme Judicial Court ("SJC") "to exercise its extraordinary authority under [state law] to reduce the verdict to murder in the second degree." Id. at 551. In his reply brief, Piantedosi added three claims pursuant to Commonwealth v. Moffett, 418 N.E.2d 585 (Mass. 1981); he asserted that a member of his jury should have been excused mid-trial, that a manslaughter instruction was warranted, and that certain video evidence should have been admitted. Doc. No. 1 at 17-18.

The SJC rejected Piantedosi's claims in a December 18, 2017 decision. Id. at 2. In his timely pro se federal habeas petition, Piantedosi reasserts the same challenges he presented to the SJC. Id. at 3, 6, 8-9, 11; see also id. at 17-18 (attaching without explanation the pages of his brief to the SJC in which the three Moffett claims were identified). As set forth below, all but one of Piantedosi's federal claims are unexhausted.

II.     LEGAL STANDARDS

A state prisoner is not entitled to habeas relief in federal court unless he has first exhausted his available remedies in state court. 28 U.S.C. § 2254(b); O'Sullivan v. Boerkel, 526 U.S. 838, 839 (1999); Mele v. Fitchburg Dist. Ct., 850 F.2d 817, 819 (1st Cir. 1988). A

2

petitioner "shall not be deemed to have exhausted the remedies available . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." § 2254(c). To satisfy this requirement, a petitioner must complete the state's established appellate review process, thereby giving "the state courts one full opportunity to resolve any constitutional issues." O'Sullivan, 526 U.S. at 839; accord Mele, 850 F.2d at 819.

In Massachusetts, a petitioner must present his claims to the SJC before asking a federal habeas court to consider them. Mele, 850 F.2d at 820, 823. "[A]n appealed issue cannot be considered as having been fairly presented to the SJC for exhaustion purposes unless the applicant has raised it within the four corners of" his petition or brief to the SJC. Id. at 823; cf. Silvia v. Hall, 193 F. Supp. 2d 305, 311 (D. Mass. 2002) (finding issues were fairly presented to the SJC where they were discussed in the text of the fact and argument sections of the SJC petition, though not listed among the "issues for further appellate review").

A petitioner may not escape the exhaustion doctrine by pairing unexhausted claims with other constitutional questions that have been fairly presented to every level of the state courts. Such a "mixed petition" is subject to dismissal unless the petitioner elects to abandon his unexhausted claims. DeLong v. Dickhaut, 715 F.3d 382, 386 (1st Cir. 2013); accord Rose v. Lundy, 455 U.S. 509, 522 (1982). Although federal courts may hold a mixed petition in abeyance while the petitioner returns to state court to litigate any unexhausted claims, such discretion is appropriately exercised only where there is a good cause for the failure to exhaust, and the unexhausted claims are potentially meritorious. DeLong, 715 F.3d at 387; accord Rhines v. Weber, 544 U.S. 269, 275-76 (2005).

III.     DISCUSSION

The respondent asserts that Piantedosi's petition contains four federal claims, of which three are unexhausted. Doc. No. 16 at 1-2. The record demonstrates that the respondent is correct with respect to the four claims it addresses, and, to the extent Piantedosi seeks to press federal challenges related to the three Moffett claims he presented to the SJC, such challenges also are unexhausted.

   A.     Grounds 1 through 4

The respondent implicitly concedes—correctly—that Piantedosi exhausted the federal basis for Ground 1 in his direct appeal. See id. at 1-2, 6, 8-11 (arguing that Piantedosi "did nothing to alert the SJC to the federal quality of Grounds 2-4"); see also Piantedosi, 87 N.E.3d at 553 (characterizing the first claim on appeal as asserting a federal constitutional violation). As such, the petition plainly includes one fully exhausted federal claim attacking limitations the trial court placed on the testimony of a defense expert at trial.

In Grounds 2 and 3, Piantedosi duplicates claims he presented to the SJC as challenges to the trial court's application of state evidentiary and substantive criminal law. See Doc. No. 1 at 8-9 (challenging admission of expert testimony "on the ultimate issue" and in violation of "McHoul standard" applicable under state common law, and alleging erroneous jury instruction regarding the consequence under state law of a finding of insanity). Presumably because Piantedosi's state-court submissions did not articulate federal dimensions of either claim, the SJC rested its consideration and rejection of the claims entirely on state law. See Doc. No. 15-1 at 43-44, 56-69 (citing in direct appeal briefs only state law, but for one quote from a U.S. Supreme Court decision that has no concrete bearing on the legal issues presented here); Piantedosi, 87 N.E.3d at 557-60 (discussing and resolving the same two challenges on state-law

4

grounds). Even construing Piantedosi's pro se petition liberally, as this Court must, no federal claims related to Grounds 2 and 3 were fairly presented to the state courts. In fact, the Court would have to reimagine the petition entirely in order to find that Grounds 2 and 3 include challenges arising under federal law, as Piantedosi's description of those claims does not reference the United States Constitution or any other federal law. Doc. No. 1 at 8-9. In these circumstances, the Court is obligated to conclude that Grounds 2 and 3, to the extent they present federal challenges, are unexhausted.[2] See Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997) (noting "heavy burden" on habeas petitioner "to show that he fairly and recognizably presented to the state courts the factual and the legal bases of [his] federal claim" (emphasis added)).

Repeating Piantedosi's fourth appellate claim, Ground 4 "requests that this court exercise its power under [a state statute] to reduce the degree of guilt to second degree murder." Doc. No. 1 at 11. Whereas one could conceive of federal claims related to the issues articulated in Grounds 2 and 3 of the petition, Ground 4 explicitly and exclusively arises from a state statute establishing a specific form of appellate review reserved to the SJC in murder cases. Mass. Gen. Laws ch. 278, § 33E. No cognizable federal claim arises from that state statute, and Piantedosi has neither raised here nor exhausted in state court any related federal claim.

---

[2] Even if Piantedosi had exhausted Grounds 2 and 3, the procedural default doctrine likely would bar federal review of both claims, given the SJC's observation that no objections were made at trial and its invocation of "miscarriage of justice" review. Piantedosi, 87 N.E.3d at 557, 559; see Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010) (deeming Massachusetts waiver doctrine "an independent and adequate state procedural ground" that bars federal habeas review); Doucette v. Vose, 842 F.2d 538, 540 (1st Cir. 1988) (allowing consideration of waived claims by habeas court only if state court makes clear that its affirmance rests on federal law rather than state procedural rule).

B.      The *Moffett* Claims

Piantedosi did not append additional "Grounds" sections to his federal habeas petition identifying, in the required form, his three Moffett claims as challenges he wishes to pursue here. Rather, he simply attached the final few pages of his SJC reply brief, on which these claims were identified, to the back of his federal petition without referencing or explaining the attachment anywhere in the body of the petition. Doc. No. 1 at 17-19. Assuming that Piantedosi intended to incorporate the claims into his petition, he did not articulate his Moffett claims in terms of federal law in his brief to the SJC, nor did he identify any federal basis for the claims here. As such, they, too, are unexhausted.[3]  See Adelson, 131 F.3d at 262.

C.      Stay or Dismissal

As Piantedosi's petition presents a mix of exhausted and unexhausted claims, this Court must dismiss the entire petition unless Piantedosi chooses to give up his unexhausted claims. DeLong, 715 F.3d at 387. The record does not warrant a discretionary stay in this case. Having received no response from Piantedosi to the motion to dismiss, the Court is aware of no facts suggesting good cause for his failure to exhaust and, thus, finds no reason to hold the petition in abeyance while Piantedosi returns to state court to litigate the unexhausted claims (an avenue which Piantedosi has not proposed in any event). Id. at 386.

---

[3] To the extent the Moffett claims also presented issues not preserved via objection during Piantedosi's trial—as his SJC brief explicitly acknowledges with respect to the first claim, Doc. No. 1 at 17—federal review would be barred by the procedural default doctrine, even if the claims were exhausted. Additionally, it appears unlikely that Piantedosi could establish cause and prejudice or a miscarriage of justice to obtain review of any defaulted claims, as his own state-court filings concede his factual guilt. E.g., Doc. No. 15-1 at 65-66 (characterizing Piantedosi as "an 'insane' killer"); see Schlup v. Delo, 513 U.S. 298, 316, 324 (1995) (explaining that "miscarriage of justice" requires showing of actual innocence); United States v. Frady, 456 U.S. 152, 168 (1982) (discussing cause and prejudice).

IV.     CONCLUSION

Accordingly, Piantedosi's federal habeas petition will be DISMISSED unless he chooses to abandon his unexhausted claims (Grounds 2 through 4 and his Moffett claims).  **Within thirty days of this Order, Piantedosi shall notify the Court of his decision as to the unexhausted claims**.

**If Piantedosi elects not to delete the unexhausted claims, or if he fails to notify the Court of his decision in this regard, his petition will be DISMISSED without prejudice.**

Should Piantedosi choose to pursue only his exhausted claim (Ground 1), the following briefing schedule will govern proceedings regarding that claim:  1) Piantedosi shall file a brief addressing the merits of Ground 1 within thirty days of submitting his notice abandoning the unexhausted claims; 2) the respondent shall file a brief addressing the merits of Ground 1 within thirty days of receiving Piantedosi's brief; and 3) if Piantedosi wishes to file a reply, he may do so within fourteen days of the filing of the respondent's brief, with any reply limited to five pages.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge